UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WAYNE RENNALLS,

                    Plaintiff,

     v.

ROLAND ALFREDO, CORRECTIONAL
OFFICER PRIEST, WESTCHESTER
COUNTY, and NEW YORK CORRECT
CARE SOLUTIONS MEDICAL SERVICES,
P.C.,

               Defendants.

No. 12-CV-5300 (KMK)

OPINION AND ORDER

---

Appearances:

Wayne Rennalls
White Plains, NY
*Pro Se Plaintiff*

George Patrick Burns, Jr. Esq.
Westchester County Attorney's Office
White Plains, NY
*Counsel for Defendants Correctional
Officer Priest and Westchester County*

James Christopher Freeman, Esq.
Kent Hazzard, LLP
White Plains, NY
*Counsel for Defendant New York Correct
Care Medical Services, P.C.*

KENNETH M. KARAS, District Judge:

       Pro se Plaintiff Wayne Rennalls ("Plaintiff") brings the instant Sixth Amended

Complaint pursuant to 42 U.S.C. § 1983 against inmate Roland Alfredo ("Alfredo"),

Correctional Officer Priest ("Priest"), Westchester County, and New York Correct Care

Solutions Medical Services, P.C. ("Correct Care"), alleging violations of his constitutional rights

arising from an attack by inmate Alfredo.  (Sixth Am. Compl. (Dkt. No. 60).)  Plaintiff also

alleges state law tort claims based on the same facts.  Before the Court is the Motion to Dismiss

filed by Priest and Westchester County, (collectively, the "County Defendants") (*see* Dkt. No.

94), and the Motion to Dismiss filed by Correct Care, (*see* Dkt. No. 89).  For the following

reasons, the County Defendants' Motion to dismiss is granted and Correct Care's Motion is

granted in part and denied in part.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiff's Sixth Amended Complaint and are taken

as true for the purpose of resolving the instant Motion.  The events giving rise to this Action

occurred during Plaintiff's incarceration at Westchester County Jail on December 1, 2011 at

approximately 8:25 A.M.  (Sixth Am. Compl. 2.)[1]  Plaintiff alleges that Alfredo struck him

"numerous times in [the] left eye, left ear[,] and spinal cord column" with a cast on Alfredo's

person that extended "from [his] knuckles to [his] forearm."  (*Id.* at 3.)  As a result, Plaintiff is

partially blind in his left eye and partially deaf in his left ear, suffers extreme pain to his spinal

cord "that become[s] wors[e] daily," and suffers from "unbearable beyond painful headaches."

(*Id.*)  Plaintiff received sutures for his injuries from the attack.  (*Id.*, at unnumbered 24.)  Plaintiff

also claims that because of his partial deafness he needs a hearing aid, and that he has not yet

received one.  (*Id.* at 3.)

---

[1] Plaintiff filed multiple handwritten copies of the Sixth Amended Complaint and
submitted the copies as one complete document, together with other documents.  (Dkt. No. 60.)
The Court notes that there are slight variations among the copies of the Sixth Amended
Complaints, but that the alleged facts are consistent.  Moreover, some of the pages in the
combined document are numbered, whereas others are not and, therefore, the Court cites the
page numbers consecutively in the order in which they appear.

Plaintiff claims that the attack occurred as a result of several of Defendants' actions. First, Plaintiff alleges that "Paul Adler[,] [("Adler")] [the medical director at the prison] acted recklessly in such [an] alcohol state of mind, [by] allowing . . . [Alfredo] into the prison/jail population with a cast from [his] knuckles to forearm [while knowing] that at any time it could be used as a weapon." (*Id.*)  Second, Plaintiff alleges that Priest failed to follow the morning cell clean-up protocol, and that Westchester County allows all correctional officers to disobey the rules and regulations listed on page three of the "Institutional Inmate Rule Book." (*Id.*)[2]

Plaintiff also alleges that Correct Care acted with deliberate indifference by allowing medical staff "impaired with" drugs and alcohol to work, which "clouded" their judgment. (*Id.*) Plaintiff claims that Correct Care did not acknowledge Plaintiff's requests to be "tested/examined by a medical specialist to evaluate [his] medical issues," and did not conduct

---

[2] The County Defendants provide the Court with a copy of "the Westchester County Department of Correction Inmate Handbook in-force on December 1, 2011." (County Defs.' Mem. of Law in Supp. of Mot. To Dismiss the Sixth Am. Compl. ("County Defs.' Mem.") 2 n.5 (Dkt. No. 96); *see* Decl. of George P. Burns in Supp. of Mot. To Dismiss Pl.'s Sixth Am. Compl. ("Burns Decl.") Ex. 2 (Dkt. No. 95).)  The County Defendants argue that Plaintiff incorporates the Inmate Handbook by reference.  As discussed below, although generally a court "look[s] only to the allegations on the face of the complaint" to decide a motion to dismiss, *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007), a court may consider documents "incorporated in the complaint by reference[] and . . . matters of which judicial notice may be taken," *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted). Moreover, "[w]here a document is not incorporated by reference, the court may never[the]less consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotation marks omitted).  Here, the Court acknowledges that Plaintiff relies on page three of the "Inmate Handbook," which makes no mention of a morning cell clean-up procedure that prison officials should follow.  (*See* Burns Decl. Ex. 2, at 3.)  Nevertheless, in an abundance of caution and because generally only materials outside of the complaint that are consistent with a pro se plaintiff's allegations may be considered at the Motion To Dismiss stage, *see Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013), the Court does not consider the "Inmate Handbook" for the purpose of resolving the County Defendants' Motion.

an "updated M.R.I., C.A.T. scan[,] and hearing" test to determine his injuries from the incident alleged above.  (*Id.*)  Plaintiff requests various forms of monetary and injunctive relief.  (*Id.* at 5.)

    B.  <u>Procedural History</u>

Plaintiff filed the initial Complaint on July 6, 2012 against Alfredo, the "CCS Medical Department," "John Doe date 12-1-11 of NP-D-Block Control Bubble," Priest, Valhalla Jail, Westchester County, and Westchester County Department of Corrections.  (Dkt. No. 2.)  On October 2, 2012, the Court terminated Defendants Valhalla Jail and Westchester County Department of Corrections because these entities do not have the capacity to be sued.  (Dkt. No. 6.)  Plaintiff filed a First Amended Complaint on October 23, 2012, (Dkt. No. 12), a Second Amended Complaint on November 27, 2012, (Dkt. No. 8),[3] a Third Amended Complaint on July 30, 2013, (Dkt. No. 27), a Fourth Amended Complaint on December 4, 2013, (Dkt. No. 43), and a Fifth Amended Complaint on April 11, 2014, (Dkt. No. 55).  On May 28, 2014, Plaintiff filed the instant Sixth Amended Complaint against Adler, Alfredo, Correct Care, Priest, and Westchester County.  (Dkt. No. 60.)

The Court held a Pre-Motion Conference regarding Defendants' Motions to Dismiss on December 4, 2014, and dismissed without prejudice all of Plaintiff's claims against Adler for the reasons stated on the record and per Plaintiff's request.  (Dkt. No. 85.)  Pursuant to a scheduling order adopted the same day, (Dkt. No. 84), Correct Care filed its Motion to Dismiss the Sixth Amended Complaint and accompanying papers on January 13, 2015, (Dkt. Nos. 89–90, 92), and the County Defendants filed their Motion to Dismiss the Sixth Amended Complaint and

---

[3] Although the Second Amended Complaint was filed after the First Amended Complaint, the docket number for the Second Amended Complaint precedes the docket number for the First Amended Complaint.

accompanying papers on January 15, 2015, (Dkt. Nos. 94–96).  Plaintiff submitted a letter dated

February 16, 2015, making several discovery demands on Defendants, (Dkt. No. 105), and

submitted his Memorandum in Opposition to the Motions, which was filed on March 2, 2015,

(Dkt. No. 106).  Defendants filed their replies and relevant papers on April 10, 2015.  (Dkt. Nos.

110–111, 113.)[4]

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the 'grounds' of

his [or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007) (second alteration in original) (citations omitted).  Instead, the Supreme Court

has emphasized that "[f]actual allegations must be enough to raise a right to relief above the

speculative level," *id.*, and that "once a claim has been stated adequately, it may be supported by

showing any set of facts consistent with the allegations in the complaint," *id.* at 563.  A plaintiff

must allege "only enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.

But if a plaintiff has "not nudged [his or her] claims across the line from conceivable to

plausible, the[] complaint must be dismissed."  *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679

(2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a

context-specific task that requires the reviewing court to draw on its judicial experience and

---

[4] Plaintiff also submitted several letters addressing conduct that allegedly happened at
Bearhill Correctional Facility.  (Dkt. Nos. 107–109, 115.)  These letters involve conduct at a
different facility with different employees that are not Defendants in the instant Action, and,
therefore, the Court does not consider them here.

common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))).

For the purpose of resolving the Motions To Dismiss, the Court is required to consider as true the factual allegations contained in the Sixth Amended Complaint.  *See Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) ("We review de novo a district court's dismissal of a complaint pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." (italics and internal quotation marks omitted)); *Gonzalez v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008) ("On a Rule 12(b)(6) motion to dismiss a complaint, the court must accept a plaintiff's factual allegations as true and draw all reasonable inferences in his favor.").  "In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted).  Moreover, the court construes "the submissions of a pro se litigant . . . liberally" and interprets them "to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (some italics and internal quotation marks omitted).

B.  Failure to Protect Claim

1.  Applicable Law

The Eighth Amendment, which prohibits cruel and unusual punishment, requires prison officials to "take reasonable measures to guarantee the safety of inmates in their custody."

*Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (same).  Specifically, "[p]rison officials have a duty to protect prisoners from violence at the hands of other inmates since being violently assaulted in prison is 'simply not part of the penalty that criminal offenders pay for their offenses against society.'" *Lee v. Artuz*, No. 96-CV-8604, 2000 WL 231083, at *4 (S.D.N.Y. Feb. 29, 2000) (quoting *Farmer*, 511 U.S. at 834).  However, "not . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834.  Instead, "the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice." *Hayes*, 84 F.3d at 620; *see also Price v. Oropallo*, No. 13-CV-563, 2014 WL 4146276, at *8 (N.D.N.Y. Aug. 19, 2014) ("Prison officials are liable under the Eighth Amendment for harm incurred by an inmate if they act with deliberate indifference to the inmate's safety.").

To satisfy the deliberate indifference standard, a plaintiff must show that (1) "he is incarcerated under conditions posing a substantial risk of serious harm," and (2) "the defendant prison officials possessed sufficient culpable intent." *Hayes*, 84 F.3d at 620 (citing *Farmer*, 511 U.S. at 834).  The first prong is objective and requires that prison officials provide inmates with "basic human needs, one of which is 'reasonable safety.'" *Helling v. McKinney*, 509 U.S. 25, 30, 33 (1993) (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 199 (1989)). "The second prong of the deliberate indifference test, culpable intent, . . . involves a two-tier inquiry." *Hayes*, 84 F.3d at 620.  In particular, "a prison official has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." *Id.*; *see also Price*, 2014 WL 4146276, at *8 (explaining that to establish deliberate indifference, "a plaintiff must prove that

the defendant official actually knew of and disregarded an excessive risk of harm to the plaintiff's safety").

    2.  <u>Application</u>

      a.  <u>Priest</u>

Plaintiff alleges that Priest failed to protect him by disregarding the rules and regulations of the morning cell clean-up procedure, which requires every cell to be closed, thus breaching security protocol.  (Sixth Am. Compl. 3; *id.*, at unnumbered 24.)  The Court finds, however, that Plaintiff's allegations against Priest fail to plausibly suggest that Priest had sufficient culpable intent for an Eighth Amendment violation, and, therefore, the Motion To Dismiss as to this claim against Priest is granted.

With respect to the first prong of a failure to protect claim, "[g]enerally, in assessing whether the risk of an inmate's violence against other inmates is sufficiently serious[] to trigger constitutional protection, the focus of inquiry must be, not the extent of the physical injuries sustained in an attack, but rather the existence of a substantial risk of serious harm."  *Blake v. Kelly*, No. 12-CV-7245, 2014 WL 4230889, at *5 (S.D.N.Y. Aug. 26, 2014) (brackets and internal quotation marks omitted).  "A substantial risk of serious harm can be demonstrated where there is evidence of a previous altercation between a plaintiff and an attacker, coupled with a complaint by plaintiff regarding the altercation or a request by [a] plaintiff to be separated from the attacker."  *Gilmore v. Rivera*, No. 13-CV-6955, 2014 WL 1998227, at *3 (S.D.N.Y. May 14, 2014).  Plaintiff does not allege any facts that suggest he was in a previous altercation with Alfredo, or that Plaintiff complained about Alfredo prior to the attack at issue. Nevertheless, "a substantial risk of serious harm may exist in the absence of any allegation of a history of altercations between the plaintiff and his attacker."  *Blake*, 2014 WL 4230889, at *5.

Here, Plaintiff alleges that Priest failed to comply with the morning cell clean-up protocol by not

ensuring that "every cell was closed." (Sixth Am. Compl., at unnumbered 24; *see also id.* at 3.)

The Court is willing to assume, given the early stage in this Action, Plaintiff has plausibly

alleged that Priest's actions may have put Plaintiff at a substantial risk of serious harm. *See*

*Blake*, 2014 WL 4230889, at *5 (explaining that the plaintiff's allegations that the conditions of

overcrowding in a "den of violence" raised a factual question as to whether a substantial risk of

serious harm existed under the first prong); *Fernandez v. N.Y.C. Dep't of Corr.*, No.

08-CV-4294, 2010 WL 1222017, at *4 (S.D.N.Y. Mar. 29, 2010) (noting that it was "difficult to

determine, on the present record, whether and to what extent the alleged failure to station an

officer at the dorm area contributed to a risk of harm to inmates at the facility" and therefore

finding that the plaintiff had "alleged facts from which a court could reasonably infer a

substantial risk of serious harm").

Plaintiff does not, however, allege facts that plausibly suggest that Priest had knowledge

of an excessive risk to Plaintiff's safety under the second prong of a failure to protect claim. As

previously noted, Plaintiff does not allege that there were any prior incidents with Alfredo that

would have put Priest on notice that Alfredo posed a risk to Plaintiff (or any other inmate), or

that Plaintiff complained to Priest (or any prison officials) of any issues with Alfredo. Moreover,

Plaintiff does not allege that Priest knew Alfredo would use his cast as a weapon or even that

Priest was aware that Alfredo wore a cast. Accordingly, Plaintiff provides no facts from which it

could plausibly be inferred that Priest was aware that Alfredo or his cast posed a risk to

Plaintiff's safety. *See McKenny v. DeMarco*, No. 13-CV-7270, 2014 WL 6389591, at *4

(E.D.N.Y. Nov. 14, 2014) (dismissing the plaintiff's claim for failure to protect where "the

amended complaint [did] not allege any facts to support a reasonable inference that the defendant

knew of and disregarded an excessive risk to [the] plaintiff's safety").[5]   Moreover, Plaintiff does

not allege that attacks during the clean-up procedure were common in general or otherwise

foreseeable.  Rather, Plaintiff's allegations suggest that the attack "occurred quite suddenly," and

"[c]ourts have rejected constitutional claims based on such . . . circumstance[s]."  *Stewart v.

Schiro*, No. 13-CV-3613, 2015 WL 1854198, at *8 n.9 (E.D.N.Y. Apr. 22, 2015) (collecting

cases); *see also Gilmore*, 2014 WL 1998227, at *4 (finding that the plaintiff failed to meet the

subjective prong of his failure to protect claim because "[a]t best, [the] [p]laintiff has alleged an

unexpected incident, but unexpected incidents are insufficient to propagate a deliberate

indifference claim"); *Macaluso v. Nassau Cty. Corr. Ctr.*, No. 13-CV-6206, 2014 WL 1401429,

at *6 (E.D.N.Y. Apr. 8, 2014) (dismissing the plaintiff's deliberate indifference claim because

there were no facts alleged that the defendants were aware that the plaintiff cooperated against

the plaintiff's attacker or that the attacker posed a threat to the plaintiff's safety); *Parris v. N.Y.

State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 363 (S.D.N.Y. 2013) ("Because the plaintiff has

alleged no facts suggesting that any of the defendants knew of a particular risk to the plaintiff's

safety, the plaintiff has failed to state a claim that any of the defendants was deliberately

indifferent in failing to protect him from the surprise attack.").

        At most, Plaintiff's claims suggest that Priest was negligent in failing to follow security

protocol.  Under the second prong of a failure to protect claim, however, a plaintiff must allege a

---

[5] It is worth noting that Plaintiff does not allege that Priest was deliberately indifferent in
his response to Alfredo's attack on Plaintiff.  *Cf. Blake*, 2014 WL 4230889, at *6 (explaining that
the plaintiff "sufficiently allege[d] that [the defendant] had knowledge of the substantial risk of
serious harm in that [the defendant] actually witnessed the assault at the hands of two other
detainees" and did not "prevent further reasonably foreseeable physical harm, abuse, and
violence," and, therefore, concluding that the question of fact, which was not amenable to
resolution on the motion to dismiss, was whether the defendant's response to the attack was
reasonable).

culpable state of mind—"mere negligence will not suffice."  *Hayes*, 84 F.3d at 620; *cf.*

*Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (explaining that deliberate indifference

requires recklessness and that "recklessness entails more than mere negligence; the risk of harm

must be substantial and the official's actions more than merely negligent").  Accordingly,

Plaintiff fails to plausibly state a failure to protect claim as to Priest and the claim is dismissed

without prejudice.[6]

> b.  Correct Care

Plaintiff alleges that Correct Care failed to protect him by "allowing . . . prisoner Roland

Alfredo into the prison/jail population with a cast, from [his] knuckles to [his] forearm" knowing

that "at any time it could be used as a weapon."  (Sixth Am. Compl. 3.)

To begin, it is at the very least questionable that Plaintiff plausibly alleges Correct Care's

decision to allow Alfredo into the general prison population posed a substantial risk of serious

harm to inmate safety.  Plaintiff does not allege that there was anything unusual about Alfredo's

cast to render it more dangerous than an ordinary cast, or that it was uncommon for Correct Care

to allow inmates into the prison population with casts because of their potential use as a weapon.

Nonetheless, because Plaintiff does not allege facts to plausibly suggest that Correct Care had a

sufficiently culpable intent to plausibly allege a failure to protect claim, as explained below, the

---

[6] Although Plaintiff has amended the Complaint in this Action several times, this is the first adjudication on the merits of Plaintiff's claims.  Accordingly, the Court will afford Plaintiff an opportunity to amend if, after reviewing this Order and Opinion, the law therein, and the exhibits attached to the County Defendants' motion papers, he still believes that he can plausibly state claims against Defendants.  *Cf. Payne v. Malemathew*, 09-CV-1634, 2011 WL 3043920, at *6 (S.D.N.Y. July 22, 2011) ("Plaintiff has repeatedly failed to cure the defects in his claims despite having received detailed instructions and despite the bases of the dismissals having been specified in advance, and he has not identified any additional facts he could advance now that would address these defects.  Accordingly, not[]withstanding Plaintiff's pro se status, leave to amend yet again is denied.").

Court need not decide whether Plaintiff's claims that Correct Care failed to protect him by allowing Alfredo into the general population with a cast are sufficient for the Court to reasonably infer a substantial risk of serious harm.  *See Parris*, 947 F. Supp. 2d at 363 (explaining that "it [was] unnecessary to decide whether the plaintiff ha[d] satisfied the objective prong of [a failure to protect claim] because he . . . failed to satisfy the subjective prong").

There is nothing in the Sixth Amended Complaint to plausibly suggest that Correct Care knew of an excessive risk to Plaintiff's safety when it allowed Alfredo to have an arm cast. Plaintiff claims that Defendant Correct Care knew of the possibility that a cast could be used as a weapon.  (Sixth Am. Compl. 3.)  In general, however, "a failure to protect claim requires more than a showing that the correctional facility contains dangerous conditions.  Rather, the plaintiff must demonstrate that [the defendant was] deliberately indifferent to the risks those dangers posed to the plaintiff."  *Edney v. Kerrigan*, No. 00-CV-2240, 2004 WL 2101907, at *6 (S.D.N.Y. Sept. 21, 2004); *see also Melo v. Combes*, No. 97-CV-0204, 1998 WL 67667, at *5 (S.D.N.Y. Feb. 18, 1998) (finding the second prong of the plaintiff's failure to protect claim was not satisfied because the plaintiff's contentions that "bullets, and eight to ten inch store bought knives ha[d] been found repeatedly" at the facility were not sufficient to allege that the defendants had knowledge of the danger to the plaintiff himself "as opposed to issues of prison safety in the most general sense").  Accordingly, even if Correct Care knew that a cast could be used as a weapon, Plaintiff fails to allege that Correct Care was deliberately indifferent to the risks that Alfredo's cast posed to him.  *See Melo*, 1998 WL 67667, at *5 (holding that the

plaintiff's allegations were insufficient to allege that these defendants "had knowledge of the danger to the plaintiff himself as opposed to issues of prison safety in the most general sense").

Alternatively, the second prong may be satisfied if "all prisoners in [a plaintiff's] situation face such a risk," or "a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842–843.  For example, actual knowledge of a risk to Plaintiff could be established by "evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the [defendant] . . . had been exposed to information concerning the risk." *Id.* (internal quotation marks omitted).  Plaintiff does not, however, allege that Alfredo engaged in or threatened to engage in any attacks on Plaintiff or other prisoners prior to the attack at issue here or otherwise used his cast in a dangerous way.  Furthermore, Plaintiff does not allege that there were any previous attacks by inmates with casts in the prison. Instead, Plaintiff's allegations suggest that Alfredo's attack was a sudden and isolated incident, and thus, for the same reasons the Court explained above in relation to Plaintiff's claims against Priest, the Sixth Amended Complaint does not allege facts that plausibly suggests Correct Care was deliberately indifferent.  (*See* Sixth Am. Compl. 3.)  The failure to protect claim against Correct Care is therefore dismissed without prejudice.

C.  <u>*Monell* Claim</u>

1.  <u>Applicable Law</u>

"Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort."  *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 691 (1978).  Thus, when based on a public official's acts, "to prevail on a claim against a municipality under [§] 1983 . . . a plaintiff is

required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008); *cf. Salvatierra v. Connolly*, No. 09-CV-3722, 2010 WL 5480756, at *10 (S.D.N.Y. Sept. 1, 2010) (dismissing claim against municipal agencies where plaintiff did not allege that any policy or custom caused the deprivation of his rights), *adopted by* 2011 WL 9398 (S.D.N.Y. Jan. 3, 2011); *Arnold v. Westchester County*, No. 09-CV-3727, 2010 WL 3397375, at *9 (S.D.N.Y. Apr. 16, 2010) (dismissing claim against county because complaint did "not allege the existence of an unconstitutional custom or policy"), *adopted sub nom. Arnold v. Westchester Cty. Dep't of Corr.*, 2010 WL 3397372.  The fifth element reflects the notion that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997); *see also Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008) ("As subsequently reaffirmed and explained by the Supreme Court, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right.").  In other words, a municipality may not be liable under § 1983 "by application of the doctrine of respondeat superior." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (italics omitted); *see also Vassallo v. Lando*, 591 F. Supp. 2d 172, 201 (E.D.N.Y. 2008) (noting that "a municipal entity may only be held liable where the entity *itself* commits a wrong.").  Instead, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("[G]overnmental bodies can act only through natural persons . . . [and] governments should be held responsible when, and only

when, their official policies cause their employees to violate another person's constitutional rights.").

"In determining municipal liability, it is necessary to conduct a separate inquiry into whether there exists a 'policy' or 'custom.'" *Davis v. City of New York*, 228 F. Supp. 2d 327, 336 (S.D.N.Y. 2002), *aff'd*, 75 F. App'x 827 (2d Cir. 2003).  A plaintiff may satisfy the "policy or custom" requirement by alleging:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted). Under the third method, "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Bd. of Cty. Comm'rs of Bryan Cty.*, 520 U.S. at 404; *see also Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (noting that a municipality's custom "need not be memorialized in a specific rule or regulation").  Therefore, a plaintiff may establish municipal liability by demonstrating that a policy maker "indirectly caused the misconduct of a subordinate municipal employee by acquiescing in a longstanding practice or custom which may fairly be said to represent official policy." *Miller v. County of Nassau*, 467 F. Supp. 2d 308, 314 (E.D.N.Y. 2006).  To prevail on this theory of municipal liability, however, a plaintiff must prove that the custom at issue is permanent and well-settled.  *See Praprotnik*, 485 U.S. at 127 (noting that the Supreme Court "has long recognized that a plaintiff may be able to prove the existence of a widespread practice

that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage with the force of law'" (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970) (some internal quotation marks omitted))).

Normally, "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]."  *Newton*, 566 F. Supp. 2d at 271; *see also City of Okla. v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation."); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiffs' injury, *Monell* prohibits a finding of liability against the City."); *Johnson v. City of New York*, No. 06-CV-9426, 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (noting that after demonstrating the existence of a municipal policy or custom, "a plaintiff must establish a causal connection—an affirmative link—between the policy and the deprivation of his constitutional rights" (internal quotation marks omitted)).  In the end, "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury."  *Roe*, 542 F.3d at 37 (quoting *Brown*, 520 U.S. at 404).

At this stage, of course, Plaintiff need not prove these elements, but still must plead them sufficiently to make out a plausible claim for relief.  Although there is no heightened pleading requirement for complaints alleging municipal liability under § 1983, *Leatherman v. Tarrant*

*Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993), a complaint does not "suffice if it tenders naked assertion[s] devoid of further factual enhancement," *Iqbal*, 556 U.S. at 678 (alteration in original) (internal quotation marks omitted).  Thus, to survive the County Defendants' Motion to Dismiss, Plaintiff cannot merely allege the existence of a municipal policy or custom, but "must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012).  Put another way, conclusory allegations of a municipal custom or practice of tolerating official misconduct are insufficient to demonstrate the existence of such a custom unless supported by factual details.

2. <u>Application</u>

Plaintiff brings a municipal liability claim against Westchester County for allegedly engaging in a "pattern that [all] correctional officers disobey such rules [and] regulations govern[ed]" by page three of the "Inmate Handbook." (Sixth Am. Compl. 3.)  The Court construes Plaintiff's *Monell* claim as alleging that the practice of disregarding the rules and regulations governed by the relevant portion of the Inmate Handbook was "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware[,]" or a "failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Brandon*, 705 F. Supp. 2d at 276–77.

Under either of these theories, Plaintiff's bare allegation that there was a pattern that all correctional officers disobeyed the rules and regulations that Plaintiff points to are "conclusory, and therefore must be disregarded." *Simms v. City of New York,* No. 10-CV-3420, 2011 WL

4543051, at *3 (E.D.N.Y. Sept. 28, 2011) (dismissing conclusory allegations that did not provide

any facts that would allow the court to infer what city policies or practices led to the alleged

deficiency) (citing *Iqbal*, 556 U.S. at 678–79), *aff'd*, 480 F. App'x. 627 (2d Cir. 2012); *see also*

*Lowery v. City of New York*, No. 10-CV-7284, 2014 WL 2567104, at *6 (S.D.N.Y. June 6, 2014)

(dismissing a pro se plaintiff's *Monell* claim for failing to allege either an underlying violation or

sufficient facts beyond "boilerplate, conclusory allegations"); *Moore v. City of New York,* No.

08-CV-8879, 2010 WL 742981, at *6 (S.D.N.Y. Mar. 2, 2010) ("Allegations that a defendant

acted pursuant to a policy or custom without any facts suggesting the policy's existence, are

plainly insufficient." (internal quotation marks omitted)).

 Moreover, Plaintiff's claim is based on a single incident of Priest's failure to follow

protocol, which generally is insufficient to establish a *Monell* claim.  *See Stewart*, 2015 WL

1854198, at *16 (dismissing *Monell* claim where the plaintiff alleged "that he was injured as a

result of a single, isolated episode of misconduct by a fellow inmate"); *Fernandez*, 2010 WL

1222017, at *6 ("Plaintiff appears to allege a single, isolated episode of misconduct by correction

officers . . . in failing to adequately provide for his safety and medical needs.  Thus, Plaintiff's

claim for municipal liability must be dismissed.").  In any event, because the Court has

determined that Plaintiff failed to demonstrate an underlying constitutional violation as to

Priest's alleged failure to follow the relevant protocol, Plaintiff's *Monell* claim fails.  *See*

*Stewart*, 2015 WL 1854198, at *17 (explaining that where "the court ha[s] already determined

that [the] [p]laintiff failed to demonstrate an underlying constitutional violation . . . . [his] *Monell*

claim also necessarily fail[ed]"); *cf. Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006)

("Because the district court properly found no underlying constitutional violation, its decision

not to address the municipal defendants' liability under *Monell* was entirely correct.").

Accordingly, Plaintiff's *Monell* claim is dismissed.

  D. <u>Deliberate Indifference to Plaintiff's Medical Needs</u>

    1. <u>Applicable Law</u>

 "The Eighth Amendment forbids deliberate indifference to serious medical needs of

prisoners." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013)

(internal quotation marks omitted). "There are two elements to a claim of deliberate indifference

to a serious medical condition." *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009). "The first

requirement is objective: the alleged deprivation of adequate medical care must be sufficiently

serious." *Spavone*, 719 F.3d at 138 (internal quotation marks omitted). Analyzing this objective

prong requires two inquiries. "The first inquiry is whether the prisoner was actually deprived of

adequate medical care." *Salahuddin*, 467 F.3d at 279.[7] The second inquiry is "whether the

inadequacy in medical care is sufficiently serious. This inquiry requires the court to examine

how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or

will likely cause the prisoner." *Id.* at 280. To meet this requirement, "the inmate must show that

the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his

health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). "There is no settled, precise metric

to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v.*

*Wright*, 315 F.3d 158, 162 (2d Cir. 2003). Instead, the Second Circuit has used the following

non-exhaustive list of factors in evaluating an inmate's medical condition: "(1) whether a

reasonable doctor or patient would perceive the medical need in question as important and

---

 [7] "As the Supreme Court has noted, the prison official's duty is only to provide
reasonable care." *Salahuddin*, 467 F.3d at 279 (citing *Farmer*, 511 U.S. at 844–47).

worthy of comment or treatment, (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." *Brock*, 315 F.3d at 162 (internal quotation marks omitted); *see also Morales v. Fischer*, 46 F. Supp. 3d 239, 247 (W.D.N.Y. 2014) (same); *Griffin v. Amatucci*, No. 11-CV-1125, 2014 WL 2779305, at *4 (N.D.N.Y. June 19, 2014) (same), *rev'd in part on other grounds*, 611 F. App'x 732 (2d Cir. 2015).  The Second Circuit does not "require an inmate to demonstrate that he or she experiences pain that is at the limit of human ability to bear, nor [does the Second Circuit] require a showing that his or her condition will degenerate into a life-threatening one." *Brock*, 315 F.3d at 163.  On the other hand, "[a]n assertion of pain sensation alone, unaccompanied by any large medical complications, does not amount to a serious medical need under the Eighth Amendment." *Evan v. Manos*, 336 F. Supp. 2d 255, 260 (W.D.N.Y. 2004) (alteration in original) (internal quotation marks omitted).

"The second requirement is subjective: the charged officials must be subjectively reckless in their denial of medical care." *Spavone*, 719 F.3d at 138.  Under the second prong, the question is whether the defendants "knew of and disregarded an excessive risk to [a plaintiff's] health or safety and that [they were] both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference." *Caiozzo*, 581 F.3d at 72 (brackets, ellipses, and internal quotation marks omitted).  In other words, "[i]n medical-treatment cases not arising from emergency situations, the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) (internal quotation marks omitted).  "Deliberate indifference is a mental state equivalent to subjective recklessness[,]" and it "requires that the charged official act or fail

to act while actually aware of a substantial risk that serious inmate harm will result." *Id.* (internal quotation marks omitted).  In contrast, mere negligence is not enough to state a claim for deliberate indifference.  *See Walker*, 717 F.3d at 125; *Vail v. City of New York*, 68 F. Supp. 3d 412, 424 (S.D.N.Y. 2014) (same).  Moreover, "mere disagreement over the proper treatment does not create a constitutional claim," and accordingly, "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998); *see also Banks v. Annucci*, 48 F. Supp. 3d 394, 408 (N.D.N.Y. 2014) (same).

   2.  Application

   Plaintiff alleges that Correct Care acted with deliberate indifference to Plaintiff's serious medical needs by "not acknowledging [Plaintiff's] request to be tested/examined by a medical specialist to evaluate future medical issues," and by not giving Plaintiff updated scans, and a hearing test to determine the severity of Plaintiff's injuries.  (Sixth Am. Compl. 3.)  Moreover, Plaintiff contends that as a result of the attack, he has "sever[e] degenerations with extreme pain[] that become wors[e] daily to [his] spinal cord," that he is "partially blind in [his] left eye [with] at times blurry vision," and that he has partial "deafness in [his] left ear . . . need[s] hearing aid[]s and [suffers from] unbearable beyond painful headaches." (*Id.*)

   Plaintiff adequately alleges facts to suggest that he "was actually deprived of adequate medical care" and that "the inadequacy in [his] medical care is sufficiently serious." *Salahuddin*, 467 F.3d at 279–80.  To refute Plaintiff's allegations that he was denied adequate care, Correct Care points the Court to a "grievance decision by Sergeant Marba, which was referred to by Plaintiff in his Complaint (at page 4)." (Correct Care's Mem. of Law in Supp. of Mot. To Dismiss Pl.'s Sixth Am. Compl. ("Correct Care Mem.") 6 (Dkt. No. 90); *see also* Decl. of James

C. Freeman in Supp. of Mot. To Dismiss the Sixth Am. Compl. ("Freeman Decl.") Ex. I (Dkt. No. 92).)  Of note, several courts have considered grievances relevant to a plaintiff's claims where, as here, the plaintiff incorporated the grievances by reference into the complaint.  *See Ellison v. Evans*, No. 13-CV-885, 2013 WL 5863545, at *1 n.5 (S.D.N.Y. Oct. 31, 2013) (considering grievances that the defendants submitted "[b]ecause the[] documents [were] either explicitly referred to or incorporated by reference in [the] plaintiffs' complaint"), *aff'd sub nom.*, *Fuller v. Evans*, 586 F. App'x 825 (2d Cir. 2014), *cert. denied*, 135 S.Ct. 2807 (2015); *Sanchez v. Velez*, No. 08-CV-1519, 2009 WL 2252319, at *1 n.1 (S.D.N.Y. July 24, 2009) (explaining that "[b]ecause [the] plaintiff's grievances [were] referenced in the complaint, the grievance documents [were] incorporated by reference and properly considered on a motion to dismiss").  Of course, these documents are typically considered for the purposes of evaluating whether the inmate plaintiff administratively exhausted his or her claims.  Here, Correct Care is asking the Court to consider these documents to evaluate the merits of Plaintiff's claims, but cites no authority that supports that the Court's ability to do so in this context.  In any event, the information contained in the grievance mostly addresses Plaintiff's eye problems and the effects of that injury, such as Plaintiff's headaches.  (*See generally* Freeman Decl. Ex. I.)  Plaintiff's claims that he was deprived of additional medical care for his injuries are more extensive.  In particular, Plaintiff claims that his requests for scans and a hearing test were denied and nothing in the grievance that Correct Care submits refutes this allegation.

As to the seriousness of the claimed denials of care, it is worth noting that "[n]ot all alleged deprivations of medical care, even when they cause pain, are sufficiently serious," *Miller v. UConn Corr. Managed Health Care*, No. 10-CV-616, 2013 WL 5963078, at *2 (D. Conn. Nov. 6, 2013), and "mere disagreement over the proper treatment does not create a constitutional

claim," *Chance*, 143 F.3d at 703; *see also Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986)

(explaining that the appropriate test to determine if an inmate can establish deliberate

indifference to medical needs is "one of medical necessity and not one simply of desirability").

Without a more fully developed record, however, it is impossible for the Court to determine

whether the denial of Plaintiff's requests constituted a deprivation of adequate medical care that

is sufficiently serious. *See Rosales v. Fischer*, No. 07-CV-10554, 2009 WL 928260, at *12

(S.D.N.Y. Mar. 31, 2009) ("[G]iven the liberal construction afforded pro se complaints,

determination of whether an alleged injury is sufficiently serious is often premature at the

pleading stage and better suited to resolution on summary judgment." (italics omitted)).  Plaintiff

alleges that the pain in his spinal cord worsened over time, the attack left him partially blind in

his left eye, that he has partial deafness in his left ear, and suffers from extremely painful

headaches.  (Sixth Am. Compl. 3.)  These allegations suggest that to the extent that further care

was necessary—which the Court cannot determine at this stage—the failure to provide certain

tests, as Plaintiff claims, was sufficiently serious in that they contributed to Plaintiff's worsening

condition over time.  *See Lloyd v. Lee*, 570 F. Supp. 2d 556, 568 (S.D.N.Y. 2008) (finding that

the plaintiff satisfied the objective prong of deliberate indifference by "plausibly alleg[ing] that

the delay in receiving the MRI contributed to [the plaintiff's] pain, discomfort, and loss of

mobility, delayed his surgery, and increased the time required for his injuries to heal"); *see also*

*Ferguson v. Cai*, No. 11–CV–6181, 2012 WL 2865474, at *4 (S.D.N.Y. July 12, 2012) ("Where

temporary delays or interruptions in the provision of medical treatment have been found to

satisfy the objective seriousness requirement in [the Second Circuit], they have involved either a

needlessly prolonged period of delay, or a delay which caused extreme pain or exacerbated a serious illness.").

Moreover, Plaintiff claims that to date he still has not received a hearing aid.  (*See* Sixth Am. Compl., at unnumbered 24.)  An ability to hear is "a basic human need affecting daily activity and sufficiently serious to warrant treatment by physicians."  *Rosales*, 2009 WL 928260, at *12 (internal quotation marks omitted) (concluding that the plaintiff had adequately pled facts to satisfy the objective prong of an Eighth Amendment deliberate indifference claim where the plaintiff was told he needed further medical treatment to alleviate continuing pain in his right ear and was then denied that treatment); *see also Degrafinreid v. Ricks*, 417 F. Supp. 2d 403, 412 (S.D.N.Y. 2006) (holding that "[o]bjectively, the ability to hear is a basic human need affecting daily activity and sufficiently serious to warrant treatment by physicians," and noting that the plaintiff's "ability to hear [was] critical not only in terms of enjoyment and good health but also, and perhaps most importantly, in terms of safety and security—particularly so in the controlled environment of a prison"), *reconsideration granted on other grounds*, 452 F. Supp. 3d 328 (S.D.N.Y. 2006).  Accordingly, Plaintiff has pled facts to satisfy the objective prong of his deliberate indifference claim.

Plaintiff also has adequately alleged that agents of Correct Care acted with a sufficiently culpable state of mind.  In particular, Plaintiff claims that Correct Care's medical staff acted with deliberate indifference by "being impair[ed] with [drugs and alcohol]" while on duty, thus "clouding [their] proper judgment[.]"  (Sixth Am. Compl. 3.)  This allegation supports an inference that the officials were "subjectively reckless in their denial of medical care."  *Spavone*, 719 F.3d at 138.  Taking Plaintiff's allegations as true, as the Court must for the purpose of resolving the instant Motion, a claim that medical professionals were drunk or otherwise

impaired while treating Plaintiff satisfies the second prong of Plaintiff's Eighth Amendment deliberate indifference claim. *See Rosales*, 2009 WL 928260, at *12 ("While it may be that plaintiff has no proof whatsoever of [the alleged] improper motive even if we think it highly unlikely that he will be able to prove his allegations, that fact does not justify dismissal for failure to state a claim." (brackets and internal quotation marks omitted)).

    E.  <u>Tort Claims</u>

    Plaintiff brings state tort claims against Defendants for negligence, alleging the same facts that form the basis of his constitutional claims. (Sixth Am. Compl., at unnumbered 24–30.) The Court has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "Claims are part of the same case or controversy if they derive from a common nucleus of operative fact[s]." *SAT Int'l Corp. v. Great White Fleet (US) Ltd.*, No. 03-CV-7481, 2006 WL 661042, at *5 (S.D.N.Y. Mar. 16, 2006). Here, Plaintiff's state and federal claims arise out of a common nucleus of operative facts, namely the attack on Plaintiff by Alfredo and the lack of medical care provided by Correct Care.

    Nevertheless, because the Court dismisses Plaintiff's § 1983 claims against Priest and Westchester County, "it is within [the Court's] discretion whether to exercise supplemental jurisdiction over [P]laintiff's state law claims." *Rosato v. N.Y. Cty. Dist. Attorney's Office*, No. 09-CV-3742, 2009 WL 4790849, at *4 (S.D.N.Y. Dec. 14, 2009) (internal quotation marks omitted). "It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims." *Klein & Co. Futures, Inc. v. Bd. of Trade of City of New York*, 464

F.3d 255, 262 (2d Cir. 2006).  Accordingly, the Court declines to exercise jurisdiction over

Plaintiff's state law claims against the County Defendants and dismisses them without

prejudice.[8]

---

[8] Although Priest does not move to dismiss the state law tort claims for lack of subject matter jurisdiction, the Court notes that it likely does not have subject matter jurisdiction. Section 24 of the New York Correction Law provides, in relevant part:

> 1. No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department . . ., in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

> 2. Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of any officer or employee of the department shall be brought and maintained in the court of claims as a claim against the state.

N.Y. Correct. Law § 24.  "It is well settled that Section 24 shields employees of a state correctional facility from being called upon to personally answer a state law claim for damages based on activities that fall within the scope of the statute." *Ieradi v. Sisco*, 119 F.3d 183, 186 (2d Cir. 1997); *see also Blond v. Bradt*, No. 12-CV-1082, 2015 WL 1472152, at *4 (W.D.N.Y. Mar. 31, 2015) (same).  "Such immunity is available whether the action is pursued in a state court or, under pendent jurisdiction, in a federal court." *Ieradi*, 119 F.3d at 187.  Nevertheless, "the protection afforded by [§] 24 is not absolute," but rather "limited . . . to acts or omissions occurring within the scope of an officer's employment and in the discharge of his or her duties." *Id.* (brackets and internal quotation marks omitted).

Here, Plaintiff's allegations are based on Priest's actions that he took within the scope of his employment.  Indeed, "[c]ustody and control of inmates and the maintenance of prison safety and security are the primary duties and responsibilities of correction officers," and, therefore, "it cannot be said that . . . conduct [relating to these duties is] outside the scope of their employment." *Cepeda v. Coughlin*, 513 N.Y.S.2d 528, 530 (App. Div. 1987); *see also Ieradi*, 119 F.3d at 188 (same).  There is no doubt that Priest's alleged failure to adequately follow the morning procedures was within the scope of his duties.  Pursuant to § 24, then, "only the New York State Court of Claims has proper jurisdiction to hear [P]laintiff's state law claims because he has alleged acts that clearly fall within the scope of [Priest's] employment duties," *Crosby v. Russell*, No. 10-CV-595, 2014 WL 3809129, at *7 (N.D.N.Y. Aug. 1, 2014) (brackets and internal quotation marks omitted), and therefore dismissal of the tort claim against Priest for lack of subject matter jurisdiction is warranted, *see Tavares v. New York City Health & Hosps. Corp.*, No. 13-CV-3148, 2015 WL 158863, at *10 (S.D.N.Y. Jan. 13, 2015) ("State-law claims for damages against DOCCS employees within the scope of their employment must be brought in the New York Court of Claims as claims against New York State.").

In contrast, because the Court does not dismiss all of the federal claims against Correct Care, the Court exercises its supplemental jurisdiction over Plaintiff's tort claim against Correct Care. To begin, the Court construes Plaintiff's tort claim against Correct Care as a claim for medical malpractice. *See Virgil v. Darlak*, No. 10-CV-6479, 2013 WL 4015368, at *8 (W.D.N.Y. Aug. 6, 2013) (explaining that although the plaintiff had "styled his claim as one for 'medical negligence,' the allegations relate[d] to the provision of medical treatment and should be analyzed as a claim for medical malpractice"); *Richner v. Smithkline Beechman Clinical Labs*, No. 96-CV-2523, 1996 WL 432473, at *1 (S.D.N.Y. Aug. 1, 1996) ("Conduct that constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment must be considered medical malpractice rather than general negligence.").

"Under New York law, the requisite elements of proof in a medical malpractice action are (1) a deviation or departure from accepted practice, and (2) evidence that such departure was a proximate cause of injury or damage." *Torres v. City of New York*, 154 F. Supp. 2d 814, 819 (S.D.N.Y. 2001) (citing *Lyons v. McCauley*, 675 N.Y.S.2d 375, 376 (App. Div. 1998)); *see also Gale v. Smith & Nephew, Inc.*, 989 F. Supp. 2d 243, 252 (S.D.N.Y. 2013) ("Under New York law, the essential elements of a medical malpractice claim are a departure from good and accepted medical practice and evidence that such departure was a proximate cause of the plaintiff's injury." (brackets and internal quotation marks omitted)). Correct Care argues that Plaintiff's tort claim fails because "Plaintiff does not allege the necessary elements including a deviation from the accepted standards of medical care." (Correct Care Mem. 11.) As discussed above, however, the Court is unable to determine whether Correct Care should have further addressed Plaintiff's hearing, head, and spinal problems. Accordingly, in light of Plaintiff's allegations that his requests for further testing were denied and that he suffers continuing pain

and difficulty hearing as a result, Plaintiff has adequately alleged that Correct Care deviated or departed from accepted practices.

Correct Care also argues that "Plaintiff fails to properly allege causation between [his] injuries and the alleged lack of medical care by . . . Defendant." (*Id.*)  In particular, Correct Care states that "there is nothing in the pleadings to suggest that [Plaintiff's injuries from the attack by Alfredo] were somehow exacerbated or worsened by Defendant's subsequent care." (*Id.*)  The Court disagrees.  Plaintiff alleges that he was denied scans and a hearing test.  He further alleges that he has "sever[e] degenerations with extreme pain[] that become[s] wors[e] daily to [his] spinal cord," and that he suffers from partial deafness in his left ear, but has yet to receive a hearing aid.  (Sixth Am. Compl. 3; *id.*, at unnumbered 24.)  Accordingly, although the initial injury was caused by Alfredo, Plaintiff alleges that Correct Care's failure to adequately treat his injuries caused further damage to at least his spinal cord and hearing.  These claims are sufficient to allege causation at the motion to dismiss stage.  *See Gale*, 989 F. Supp. 2d at 252 (explaining that the plaintiff's complaint was "sufficient to survive a motion to dismiss because 'a reasonable reading of it shows that [the] plaintiff alleges [the doctor was] at least in part responsible for the surgery and aftercare that caused his injuries'" (brackets omitted) (quoting *Johnson ex rel. Johnson v. Columbia Univ.*, No. 99-CV-3415, 2003 WL 22743675, at *16 (S.D.N.Y. Nov. 19, 2003)); *cf. Koulkina v. City of New York*, 559 F. Supp. 2d 300, 328 (S.D.N.Y. 2008) (dismissing a pro se medical malpractice claim where the "plaintiffs d[id] not allege how [the doctor's] alleged conduct caused them any injury").

## III.  Conclusion

In light of the foregoing analysis, the Court grants the County Defendants' Motion To Dismiss without prejudice.  The Court grants Correct Care's Motion To Dismiss as to Plaintiff's

failure to protect claim, without prejudice, and denies the Motion with respect to the deliberate indifference and state tort law claims. As noted, even though Plaintiff has filed several amended complaints in this Action, because this is the first adjudication on Defendants' Motion to Dismiss, the claims that are dismissed are dismissed without prejudice and Plaintiff may file a Seventh Amended Complaint within thirty days of this Opinion and Order. The Clerk of Court is respectfully requested to terminate the pending Motions. (Dkt. Nos. 89, 94.)

SO ORDERED.

DATED:      September 30 , 2015
            White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE